UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
MASSACHUSETTS MUTUAL LIFE          :
INSURANCE COMPANY,                 :
                                   :
                Plaintiff,         :          **REPORT AND**
                                   :          **RECOMMENDATION**
        -against-                  :
                                   :          20 Civ. 3079 (DG) (VMS)
NELSON TUCHMAN,                    :
                                   :
                Defendant.         :
-------------------------------------------------------- x

**Scanlon, Vera M., United States Magistrate Judge:**

Plaintiff Massachusetts Mutual Life Insurance Company ("MassMutual" or "Plaintiff")

filed this action seeking to rescind a life insurance policy identified by policy number 24455183

that it issued to Defendant Nelson Tuchman ("Mr. Tuchman" or "Defendant"), alleging that

Defendant made material misrepresentations or omissions in applying for the policy. Before this

Court on referral is Defendant's motion to dismiss Plaintiff's First Amended Complaint ("FAC")

pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). See ECF No. 27. MassMutual

opposed the motion. See ECF No. 28. Defendant replied. See ECF No. 29. For the following

reasons, this Court respectfully recommends that the District Court deny Defendant's motion to

dismiss.

**I. Facts**

The following facts are taken from the FAC (ECF No. 21) and its attachments; they are

accepted as true for the purposes of this motion. See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,

493 F.3d 87, 98 (2d Cir. 2007). The Court notes that, although this statement of facts is drawn

from the pleadings, the FAC does not accurately describe some of the documents which have

been submitted to the Court.

On June 26, 2018, Defendant submitted an application to MassMutual for a $2 million life insurance policy (the "Application").  FAC ¶ 10.  The Application contained multiple parts and included questions and answers concerning Defendant's financial, medical and personal history.  Id.  The Application stated: "If the answers on this application fail to include all material information requested, the Company has the right to deny benefits or rescind a policy." Id. ¶ 11.

For persons interested in obtaining a life insurance policy issued by MassMutual, MassMutual asks such applicants questions concerning their personal and medical history, and their family health history.  Id. ¶ 12.  In order to collect that information, MassMutual emails an applicant a "CMI"[1] (the "Online CMI") seeking information about what medical diagnoses, treatment, tests and advice the applicant may have received in the previous ten years.  Id. ¶¶ 13–14.  If the applicant opens the Online CMI and answers "yes" to a question, a set of additional questions appears and requests additional related information.  Id. ¶ 15.  The Online CMI instructs the applicant to complete each follow-up question, which the applicant must do before he or she can submit the Online CMI.  Id. ¶ 16.  If the applicant responds "yes" or "not sure" to any of the follow-up questions, any answer is recorded in Section C of the Policy CMI.  Id.

As to Defendant's application for a MassMutual policy, MassMutual's records reflect that a secure link to the Online CMI was sent to Defendant's personal email address; that such link was accessed by the recipient; and that Defendant electronically signed and submitted the Online CMI to MassMutual.  Id. ¶ 13.  Plaintiff's description of this CMI process is somewhat confusing.  The FAC and the motion papers refer to two different CMIs.  First, there is an

---

[1] "CMI" stands for "client medical interview."  See ECF No. 21-1 at 50.

"Online CMI," which was allegedly emailed to Defendant, and to which Defendant allegedly provided answers when applying for the Policy. Defendant's answers to the Online CMI were not attached to the Application or the Policy, and they are not attached to the FAC. See generally FAC and attachments. Only an "exemplar" Online CMI, which does not contain Defendant's actual answers, is attached to the FAC. See FAC Exhibit 2, ECF No. 21-2. Second, there is a CMI that is part of the Application attached to the Policy (the "Policy CMI"). See FAC Exhibit 1, ECF No. 21-2, at 50–53. The FAC appears to conflate the two CMIs at times.

In the Online CMI for which a link was sent to Plaintiff by email is the following question:

> "In the last 10 years, have you been diagnosed, treated, tested positive for, or been given medical advice by a member of the medical profession for a disease or disorder noted below:
> Chest pain, heart attack, high blood pressure, heart murmur, palpitations or any other disorder of the heart, arteries or veins.[2]

Id. ¶¶ 17–19; ECF No. 21-1 at 51. Defendant responded "yes" to that question. Id. ¶ 18. Because Defendant answered "yes" to this question, the Online CMI presented Defendant with a follow-up question asking whether the applicant has ever been "diagnosed, treated, tested positive for, or given medical advice by a member of the medical profession for a disease or disorder noted below. Id. ¶ 19; ECF No. 21-2 at 3. Below that question, the applicant was shown a list of categories of various medical diagnoses and was able to check boxes next to various ones. ECF No. 21-2 at 3. The first category of diagnoses included "Chest pain heart attack, high blood pressure, heart murmur, palpitations, or any other disorder of the heart, arteries or veins." Id. Below that, the Online CMI instructs the applicant to "[s]elect all that apply (must select at least one)," then it lists subcategories. Id. The first subcategory includes

---

[2] The same question appears in the Policy CMI as Question B.6.a. See ECF No. 21-2 at 3.

"Heart attack, Stroke, Myocardial infarction, Vascular Disease, Transient Ischemic Attack, Cardiomyopathy (Heart Muscle Problem) or other types of heart failure." Id.  Additional subcategories include "Abnormal heartbeat / atrial fibrillation or atrial flutter," "Supraventricular Tachycardia," "High blood pressure / hypertension," "Heart Murmurs or Heart Valve Problem," "Pericarditis," "Vascular Disease," "Varicose Veins, Venous Insufficiency," and "Elevated cholesterol or triglyceride levels (hyperlipidemia)," and "Other / Not Sure." Id. at 3–5; FAC ¶ 21.  Below each of the subcategories (except two), the Online CMI displayed three text entry fields labeled "Please provide details," "Physician information," and "Date of Diagnosis."[3]  Id.

Defendant checked the "Other / Not Sure" option, and he stated that he had been treated for high cholesterol.  Id. ¶ 23.  He did not check a box for any other category of medical issues. Id.  Defendant's "other" response and the information he provided in connection with that response were included in Section C of the Policy CMI, which was part of the Application attached to the Policy.  Id.; ECF No. 21-1 at 52.  Of note, the follow-up categories of heart-related diagnoses that were listed below Defendant's "yes" answer were not listed in the Policy CMI.  See ECF No. 21-1 at 51.

As with a standard MassMutual life-insurance applicant, Defendant was also asked the following question:

> In the past 3 years, have you:
> Had a physical exam, check-up or evaluation by a member of
> the medical profession regarding a condition not previously
> stated on this Application?[4]

---

[3] The three text input fields seeking details, physician information and date of diagnosis do not appear after "High blood pressure / hypertension" or "Elevated cholesterol or triglyceride levels."  ECF No. 21-2 at 4–5.

[4] The exemplar Online CMI does not include this question.  See generally ECF No. 21-2.  This question appears in the Policy CMI as Question B.9.a.  See ECF No. 21-1 at 52.

Id. ¶ 25.  Defendant checked "no" in response to this question.  Id. ¶ 26.  At the bottom of the

Online CMI, Defendant affirmed and agreed that his responses in the application were "true,

complete, and correctly recorded."  Id. ¶ 28; ECF No. 21-2 at 7.  This statement was included in

the Application.  ECF No. 21-1 at 53.

MassMutual approved the Application and, based on the approved Application, issued

Defendant the Policy, which is a $2 million life insurance policy identified by policy number

24455183.  Id. ¶¶ 2, 29.  MassMutual attached the Application (containing the Policy CMI) to

the Policy, but it did not attach to the Policy the Online CMI or Defendant's answers to the

Online CMI, except to the extent the Policy CMI was generated by incorporating some of

Defendant's answers to the Online CMI.  See generally ECF No. 21-1.

The Policy contains the following provision:

> We can bring legal action to contest the validity of this policy, or any policy
> change requiring evidence of insurability, for any material misrepresentation of a
> fact.  To do so, however, the misrepresentation must have been in the initial
> application or in a subsequent application, and a copy of that application must
> have been attached to (or sent to the Owner for attachment to) and made a part of
> this policy.

See FAC Ex. A (ECF No. 21-1) at 15; FAC ¶ 31.  The Policy provides that MassMutual "cannot

contest the validity of this policy after it has been in-force during the lifetime of the Insured for

two years after its Issue Date, except for failure to pay premiums."  FAC ¶ 32.  Defendant signed

a Supplement to the Application confirming that he had received the Policy and confirming,

among other things, that his answers to the Application were "true and complete" and that such

answers had not changed since the date he had signed the Application.  Id. ¶ 30.

Plaintiff now alleges that Defendant knew that some of his answers to the Online CMI,

and as a result, in the Policy CMI attached to the Application, included material

misrepresentations when he signed the Application and when he received the Policy.  FAC

¶¶ 44–45, 52.

Defendant then applied for an additional insurance policy from MassMutual.  Id. ¶ 34.

During the underwriting of that requested policy, MassMutual received Defendant's medical

records for the three years prior to Defendant's June 26, 2018 Application for the Policy (and

before that time as well).  Id. ¶¶ 35–36.  These records showed that Defendant had been treated

by a doctor for a "cardiovascular follow-up given his history of multivessel coronary artery

disease."  Id. ¶ 37.  The medical records reported that testing revealed "a brief run of non-

sustained ventricular tachycardia (an abnormal heart rate that can cause cardiac arrest), as well as

ST segment depressions that were about 1mm."  Id. ¶ 38.  Other records showed that Defendant

    1) was positive for ischemia in the apical anterolateral wall,

    2) had mild aortic regurgitation,

    3) had minimal mitral regurgitation,

    4) had left atrial dilation, and

    5) had mild right atrial dilation.

Id. ¶ 39.  The medical records also stated that Defendant had had a "CTA" (computer

tomography angiography) showing (i) "[a] focal area of the distal LAD stent cannot be

evaluated"; (ii) "the remaining proximal LAD stents is patent"; (iii) an "area of myocardial

thinning and hypoattenuation is noted in basal anterolateral walls, which is consistent with prior

infarct"; and (iv) a "[s]mall non-specific lung nodule . . . ."  Id. ¶ 40.  Additional medical records

showed that Defendant had been receiving treatment for "CAD" (coronary artery disease) since

2013, indicated that Defendant had had stent surgery, and included results for various heart-

related testing.  Id. ¶ 41.

In responding to the Online CMI, Defendant did not check a box next to one or more of the medical issues that had been individually listed on the Online CMI as a response to his "yes" answer to Question B.6.a.  Id. ¶ 42.  He failed to disclose this even though the Online CMI specifically presented a list of the following medical issues next to each of which he could have checked a box: 1) an abnormal heartbeat, 2) superventricular tachycardia and 3) vascular disease.  Id.; ECF No. 21-2 at 3–6.

In response to Question B.9.a., Defendant checked "no."  Id. ¶ 43; ECF No. 21-1 at 52.  MassMutual understood Defendant's "no" statement to mean that he had not, in the three years prior to completing the application, "[h]ad a physical exam, check-up or evaluation by a member of the medical profession regarding a condition not previously stated on this Application[.]"  Id. ¶ 43; ECF No. 21-1 at 52.  MassMutual alleges that, had it been aware that Defendant had been treated for any of the several heart or circulatory conditions that were included in the aforementioned medical records, Defendant would not have been approved for a policy at a "Select Preferred Non Tobacco risk class," and would have been charged a higher premium for an insurance policy.  Id. ¶ 44.

MassMutual informed Defendant that because he had made material misrepresentations in the Application, MassMutual was rescinding the Policy.  Id. ¶ 46.  MassMutual provided Defendant with a full refund of the premiums that Defendant had paid for the Policy, plus interest.  Defendant has not negotiated the refund and contends that rescission is not permitted.  Id. ¶ 47.

## II. Procedural History

MassMutual commenced this action against Defendant seeking to rescind the Policy.  See ECF No. 1.  Defendant filed an answer to the complaint.  See ECF No. 7.  After the Court set a

discovery schedule, Defendant requested a pre-motion conference regarding his anticipated motion to dismiss the complaint pursuant to FRCP 12(c).  See ECF 1/28/2021 Order; ECF No. 10.  The Court issued an Order stating that a pre-motion conference was not necessary and setting a briefing schedule for the motion.  See 2/26/2021 Order.  The parties briefed the FRCP 12(c) motion, and Defendant filed the fully briefed motion.  See ECF Nos. 14–16.  The Court issued an Order noting that in its opposition, MassMutual had expressed interest in repleading, and granting leave to replead.  See ECF 1/5/2022 Order.

MassMutual filed its FAC, and the Court denied Defendant's FRCP 12(c) motion as moot.  See ECF No. 21; ECF 2/1/2022 Order.  Defendant requested a pre-motion conference regarding its anticipated motion to dismiss the FAC pursuant to FRCP 12(b)(6).  The Court determined that a pre-motion conference was not necessary and set a briefing schedule for the FRCP 12(b)(6) motion.  See ECF 2/17/2022 Order.  Defendant filed the fully briefed FRCP 12(b)(6) motion.  See ECF Nos. 27–29.  During the pendency of the motion, the parties completed discovery.  See ECF 11/4/2022 Order.

After discovery, the parties moved to postpone the summary judgment motion practice pending a decision on Defendant's motion to dismiss.  See ECF No. 33.  The Court denied the request to postpone motion practice and directed Defendant to address in his pre-motion conference letter why his motion to dismiss should not be converted to a motion for summary judgment.  See ECF 11/4/2022 Order.  Defendant requested a pre-motion conference regarding his anticipated motion for summary judgment.  See ECF No. 34.  Defendant argued that the motion to dismiss should not be converted to a motion for summary judgment "[i]n the interest of judicial economy, and fairness to Mr. Tuchman in avoiding unnecessary legal expense."  See id.  MassMutual also filed a pre-motion conference request stating its intention to move for

summary judgment.  <u>See</u> ECF No. 35.  MassMutual argued that Defendant's motion to dismiss should be converted to a motion for summary judgment because the motion "is predicated upon his purported subjective view of the application."  <u>Id.</u> at 3.  In support of that position, MassMutual alleged that Defendant's deposition testimony conflicts with the arguments he had made in his motion to dismiss and demonstrates that he "has no reasonable interpretation of the [Application] language that would support a position that he told MassMutual of his CAD history or any other heart related issue under Question B.6.a. beyond high cholesterol."  <u>Id.</u> at 4.

### III. Legal Standards

#### a.  Motion to Dismiss

In order for a plaintiff to survive a motion to dismiss filed pursuant to FRCP 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).  In ruling on a motion to dismiss, "the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 113 (2d Cir. 2010) (quoting <u>Cooper v. Parsky</u>, 140 F.3d 433, 440 (2d Cir. 1998)).  The court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor."  <u>In re Thelen LLP</u>, 736 F.3d 213, 218 (2d Cir. 2013).  Nonetheless, courts "'are not bound to accept as true a legal conclusion couched as a

factual allegation.'" Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)); see Quitoriano v. Raff & Becker, LLP, 675 F. Supp. 2d 444, 448-49 (S.D.N.Y. 2009) ("At the outset of deciding a motion to dismiss, the court may identify unsupported legal conclusions contained in the pleadings that are not entitled to an assumption of truth."). On a motion to dismiss, the court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco, 622 F.3d at 111; see Svensson v. Securian Life Ins. Co., 706 F. Supp. 2d 521, 525 (S.D.N.Y. 2010) (although the plaintiff did not attach insurance policy to the complaint, the court could "properly [] consider it without converting Defendant's motion [to dismiss] to one for summary judgment, as the Complaint explicitly refers to, and relies on, the Policy"). "If a plaintiff's own pleadings are contradicted by matters in such documents, the [c]ourt need not reconcile this difference or accept the plaintiff's pleadings as true." In re Stillwater Asset Backed Offshore Fund Ltd., No. 16 Civ. 8883 (ER), 2018 WL 1610416, at *7 (S.D.N.Y. Mar. 30, 2018). "[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 146-47 (2d Cir. 2011).

### b.  Law Governing Rescission Of Insurance Policies

"Under New York law, an insurer may rescind an insurance policy if it was issued in reliance on material misrepresentations." Fid. & Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp., 540 F.3d 133, 139 (2d Cir. 2008); Process Plants Corp. v. Beneficial Nat'l Life Ins. Co., 53 A.D.2d 214, 216, 385 N.Y.S.2d 308, 310 (1st Dep't 1976). "[T]he reliance element is not one of 'reasonable reliance' (i.e. an objective standard of reasonableness); rather, the insurer must show, by reference to its policies, that it would not have not issued the policy if it knew the

truth." Dukes Bridge, LLC v. Sec. Life of Denver Ins. Co., No. 10 Civ. 5491 (SJB), 2020 WL

1908557, at *50 (E.D.N.Y. Apr. 17, 2020).

### i. Rescission Based On A Material Misrepresentation

#### 1. Duty Of Disclosure By Applicants For Life Insurance Policies

"Under § 3204 of the New York Insurance Law, statements made on an insurance

application by a prospective insured are deemed representations." Vella v. Equitable Life Assur.

Soc. of U.S., 887 F.2d 388, 391 (2d Cir. 1989) (citing N.Y. Ins. Law § 3204(c)); Koloski v.

Metro. Life Ins. Co., 5 Misc. 3d 1028(A), 799 N.Y.S.2d 161 (N.Y. Sup. Ct., New York Co., Nov.

3, 2004.  Under New York law, "an insurance policy issued in reliance on material

misrepresentations is void from its inception." Republic Ins. Co. v. Masters, Mates & Pilots

Pension Plan, 77 F.3d 48, 52 (2d Cir. 1996); see Novick v. Middlesex Mut. Assurance Co., 84

A.D.3d 1330, 1330, 924 N.Y.S.2d 296, 296 (2d Dep't 2011) ("To establish its right to rescind an

insurance policy, an insurer must show that the insured made a material misrepresentation when

he or she secured the policy.").

New York case law describes at least two possibilities under which Plaintiff may be

found to have pleaded a cause of action for rescission based on misrepresentations.  The

Insurance Law defines "misrepresentation" as a false "statement as to past or present fact, made

to the insurer by . . . the applicant for insurance or the prospective insured, at or before the

making of the insurance contract as an inducement to the making thereof." N.Y. Ins. L. § 3105;

Principal Life Ins. Co. v. Locker Grp., 869 F. Supp. 2d 359, 363 (E.D.N.Y. 2012) (life insurance

policy applicant's misstatements as to his income entitled insurer to rescission of policy).  In the

first group of cases, the insured's intent as to the alleged misrepresentation is not an element of

the claim.  Thus, "[u]nder New York law, any material misrepresentation, even an innocent one,

allows 'insurer to avoid the contract of insurance or defeat recovery thereunder.'" New England Life Ins. Co. v. Taverna, No. 00 Civ. 2400 (ILG), 2002 WL 718755, at *7 (E.D.N.Y. Mar. 1, 2002) (quoting Mut. Ben. Life Ins. Co. v. JMR Electronics Corp., 848 F.2d 30, 32 (2d Cir. 1988)); see Kulikowski v. Roslyn Sav. Bank, 121 A.D.2d 603, 605, 503 N.Y.S.2d 863, 864 (2d Dep't 1986) (after trial, court decided as a matter of law on appeal that plaintiff's decedent's innocent misrepresentations as to undisclosed and unknown medical conditions were material to the issuance of the life insurance policy and granted rescission).

"The concept of misrepresentation encompasses both false affirmative statements and the failure to disclose where a duty to disclose exists." Chicago Ins. Co. v. Kreitzer & Vogelman, No. 97 Civ. 8619 (RWS), 2000 WL 16949, at *6 (S.D.N.Y. Jan. 10, 2000). "It is the applicant's duty to disclose . . . every fact bearing on or pertaining in any way to the insurability of [his] life, especially where specific questions are put to the applicant calling for such information." Taverna, 2002 WL 718755, at *7 (quoting Cohen v. Mut. Ben. Life Ins. Co., 638 F. Supp. 695, 698 (E.D.N.Y. 1986)). "An insured cannot remain silent while cognizant that his insurance application contains misleading or incorrect information." N. Atl. Life Ins. Co. v. Katz, 163 A.D.2d 283, 284, 557 N.Y.S.2d 150, 152 (2d Dep't 1990). "In particular, [the applicant] must notify his insurance company of nonapparent medical conditions which the company probably would consider relevant when deciding whether to issue a policy." Id. Because of this standard, the burden may fall on a policyholder to prove that the statements made as to the applicant's health in the policy application were correct. See Lincoln Life & Annuity Co. of New York v. Lenke Halpert 2006 A Irrevocable Life Ins. Tr. Dated 5/15/06, No. 14988/09, 2011 WL 534424, at *5, 30 Misc. 3d 1223(A), 926 N.Y.S.2d 344 (N.Y. Sup. Ct., Kings Co., 2011) ("In addition,

the defendants fail to establish that the allegations regarding Decedent's health, as made in the application for the Policy, were accurate.").

The second line of New York cases looks for a lack of good faith or for fraudulent intent on the insured's part as to the alleged material nondisclosure. A policy may be rescinded if an applicant failed to disclose information, even if unrequested, if that concealment was done with wrongful intent. "While generally an 'applicant for insurance is under no duty to volunteer information where no question plainly and directly requires it to be furnished,' an applicant is required to provide truthful and comprehensive answers to the questions asked in connection with his or her insurance application(s), and fraudulent concealment may at times void an insurance policy even where the fact concealed was not inquired into by the insurer." Emps. Ins. Co. of Wausau v. Kingstone Ins. Co., No. 17 Civ. 3970 (DAB) (SDA), 2019 WL 7040427, at *8 (S.D.N.Y. Dec. 4, 2019), report & recommendation adopted, No. 17 Civ. 3970 (DAB), 2019 WL 6998386 (S.D.N.Y. Dec. 19, 2019) (quoting Vella, 887 F.2d at 393). "Concealment is 'the designed and intentional withholding of any fact material to the risk which the insured in honesty and good faith ought to communicate to the [insurer].'" Lighton v. Madison-Onondaga Mut. Fire Ins. Co., 106 A.D.2d 892, 892–93, 483 N.Y.S.2d 515, 516 (4th Dep't 1984) (quoting Sebring v. Fid.-Phenix Fire Ins. Co., 255 N.Y. 382, 387, 174 N.E. 761, 763 (1931)).

"To constitute fraud, the nondisclosure must be in bad faith with intent to mislead the insurer." Aetna Cas. & Sur. Co. v. Retail Local 906 of AFL-CIO Welfare Fund, 921 F. Supp. 122, 132 (E.D.N.Y. 1996). "In other words, 'if the applicant is aware of the existence of some circumstance which he knows would influence the insurer in acting upon his application, good faith requires him to disclose that circumstance, though unasked.'" Id. (quoting Sebring, 255 N.Y. at 387, 174 N.E. at 763). "[W]here the nondisclosure, as to a matter which the insured has

13

not been directly asked, constitutes fraud, the policy may be voided." Lee v. Union Mut. Fire Ins. Co., No. 20 Civ. 3191 (MKB), 2022 WL 3370086, at *4 (E.D.N.Y. Aug. 16, 2022) (internal quotation marks omitted); see First Fin. Ins. Co. v. Allstate Interior Demolition Corp., 193 F.3d 109, 117–18 (2d Cir. 1999) (An "insurance policy may be voided for concealment only when [the insured] conceals matters material to the risk and he does so in bad faith with intent to deceive the insurer.") (quoting Boyd v. Otsego Mut. Fire Ins. Co., 125 A.D.2d 977, 510 N.Y.S.2d 371 (4th Dep't 1986)).

The Court need not determine which line of cases applies to this case at this time because, as explained below, under either one, Plaintiff has sufficiently pleaded a cause of action for rescission.

### 2. Whether A Nondisclosure Is A Material Misrepresentation That May Lead To A Policy Rescission Must Be Alleged But Need Not Be Proved In The Pleadings

"A misrepresentation is material if the insurer would not have issued the policy had it known the facts misrepresented." Zilkha v. Mut. Life Ins. Co., 287 A.D.2d 713, 714, 732 N.Y.S.2d 51, 52 (2d Dep't 2001); Allstate Interior Demolition, 193 F.3d at 118. "With regard to whether a misrepresentation is material, courts have declared that 'the question . . . is not whether the company might have issued the policy even if the information had been furnished; the question in each case is whether the company has been induced to accept an application which it might otherwise have refused.'" Glatt v. Union Cent. Life Ins. Co., No. 92 Civ. 1227, 1994 WL 329985, at *8 (S.D.N.Y. July 11, 1994) (quoting Geer v. Union Mut. Life Ins. Co., 273 N.Y. 261, 269, 7 N.E.2d 125, 128 (1937)). "[T]he mere fact that an insured fails to disclose a condition that may have been material to the insurance company does not automatically entitle the insurer to rescission. Rather, the insured must at least have reason to believe that the fact not disclosed is material." Glatt, 1994 WL 329985, at *8; see Christiania Gen. Ins. Corp. v. Great

14

Am. Ins. Co., 979 F.2d 268, 279 (2d Cir. 1992) ("[T]he party with a duty to disclose must at least have reason to believe the fact not disclosed is material.").

Materiality may be established by an offer of admissible evidence, such as with an offer of testimonial or documentary evidence. "Generally, materiality is a question of fact to be determined at trial; however, where the evidence concerning materiality is clear and substantially uncontradicted, the matter is one of law for the court to determine." Taverna, 2002 WL 718755, at *9 (internal quotations omitted). "Conclusory statements by insurance company employees, unsupported by documentary evidence, are insufficient to establish materiality as a matter of law." Schirmer v. Penkert, 41 A.D.3d 688, 691, 840 N.Y.S.2d 796, 799 (2d Dep't 2007). When analyzing whether a particular misrepresentation is material, a court may look to evidence in the form of sworn affidavits and underwriting guideline manuals and rules. See Taverna, 2002 WL 718755, at *9; Kulikowski, 121 A.D.2d at 605, 503 N.Y.S.2d at 864 (after trial, court granted rescission based in significant part on underwriter's testimony).

Defendant argues that "[s]ince there is no misrepresentation, the issue of materiality becomes moot." Def. Mem., ECF No. 27-1, at 21. The Court disagrees because, as discussed below, Defendant may have had a duty of disclosure and may have made a misrepresentation by omission, and if so, materiality would be relevant.

### ii. New York Insurance Law § 3204

New York Insurance Law § 3204(a)(1) sets forth that "[e]very policy of life, accident or health insurance, or contract of annuity, delivered or issued for delivery in this state, shall contain the entire contract between the parties, and nothing shall be incorporated therein by reference to any writing, unless a copy thereof is endorsed upon or attached to the policy or contract when issued." N.Y. Ins. L. § 3204(a)(1). The statute provides that "[n]o application for

15

the issuance of any such policy or contract shall be admissible in evidence unless a true copy was attached to such policy or contract when issued." N.Y. Ins. L. § 3204(a)(2). "The general rule is that the application becomes a part of the agreement between the parties, and that the policy and application, taken together, constitute the contract of insurance." Appleman on Ins. L. & Practice Archive § 15.16 (2d ed. 2011). "Section 3204(a) derives from Section 58 of the Insurance Law of 1909, which required that the insurance policy contain the entire contract between the parties." Mass. Cas. Ins. Co. v. Morgan, 886 F. Supp. 1002, 1006 (E.D.N.Y. 1995).

"Under § 3204, insurance companies are obligated to 'set[] forth in each policy issued the entire agreement, as well as every statement or representation which induced its making, and upon which the company relied, if it is to be available as a defense.'" Smith v. Pruco Life Ins. Co., 710 F.3d 476, 480 (2d Cir. 2013) (quoting Hurley v. John Hancock Mut. Life Ins. Co., 247 A.D. 547 (4th Dep't 1936)). "New York courts have explained that § 3204 is 'directed toward the protection of the insured or his or her beneficiary by providing the insured with the opportunity to examine those writings, including applications, that may be relevant to the policy and, particularly in the case of applications, affording an opportunity to correct any incorrect statements therein.'" Smith, 710 F.3d at 480 (quoting Gozan v. Mut. Life Ins. Co. of N.Y., 40 N.Y.2d 707, 711 (1976)). "The purpose of allowing the insured to review, understand and correct at the time of delivery any information that the insurance company might raise as a defense to coverage is to ensure that 'interested persons may avoid either being misled as to the insurance protection obtained or paying premiums for years in ignorance of facts nullifying the supposed protection.'" Smith, 710 F.3d at 480 (quoting Cutler v. Hartford Life Ins. Co., 22 N.Y.2d 245, 252 (1968)); see Appleman, supra, § 3-15.1 ("The purpose of the requirement is to permit the insured to satisfy the duty of examination to ascertain whether the answers contained

16

in the application were correctly recorded especially where the actual transcription was made by the agent from the applicant's oral statements."). "[A] document may be incorporated by reference into a life insurance policy, and relied on by the insurer as a defense to coverage, if and only if it is 'endorsed upon or attached to the policy or contract when issued,' so that the insured has an opportunity to review and understand the full terms and conditions of the policy from the moment he begins to pay premiums." Smith, 710 F.3d at 480 (quoting N.Y. Ins. L. § 3204(a)(1)). "[A]n insurer may not introduce as evidence representations or statements by the insured if the insured 'did not have a copy of such statements[,] . . . could not, by reading his policy, know what the statements were[, or] had no opportunity to correct any error in the statements." Smith, 710 F.3d at 481 (quoting Lampke v. Metro. Life Ins. Co., 279 N.Y. 157, 162 (1938)).

## IV. Analysis

This Court respectfully recommends that the District Court find that the FAC sufficiently alleges a cause of action for rescission based on Defendant's alleged material misrepresentation or misrepresentations in his Application for the Policy and deny Defendant's motion to dismiss.

Defendant argues that the FAC must be dismissed because 1) the exemplar Online CMI attached to the FAC is inadmissible, and 2) there is no material misrepresentation in the Application that was attached to the Policy. Def. Mem., ECF No. 27-1, at 1–3. Defendant construes Plaintiff's complaint and supporting arguments too narrowly.

### a. The Court Does Not Determine The Applicability Of § 3204 On This Motion To Dismiss

Defendant argues that this case can be resolved now because of the evidentiary limitations imposed by New York Insurance Law § 3204. Def. Mem., ECF No. 27-1, at 7–11. In Plaintiff's memorandum of law, Plaintiff agrees that "the Court need not wade into the legal

17

effect(s) of" the Online CMI, ECF No. 28 at 10, although Plaintiff's description of the facts discusses it extensively. Given this concession that Plaintiff does not rely on the Online CMI on this motion to dismiss, the Court does not consider the Online CMI in deciding that Plaintiff has successfully pleaded a rescission claim. It may be that Defendant's arguments about the Insurance Law are relevant later in the case as to what evidence the Court may consider on a summary judgment motion or deem admissible at trial. See Smith, 710 F.3d at 481 (discussing § 3204 effect on admissibility of certain documents at trial).

### b. Plaintiff Has Sufficiently Pleaded A Rescission Claim

Defendant incorrectly argues that the Court can dismiss Plaintiff's claim because Plaintiff can only offer the actual Application in support of its claim. Def. Mem., ECF No. 27-1, at 11. Defendant argues that any misrepresentation considered by the Court must be limited to an assessment of whether Defendant's answers to Question B.6.a. and Questions B.9.a. in the Application were correct, and if so, the conclusion required is that Plaintiff has no claim. Def. Mem., ECF No. 27-1, at 13-21; see III(b)(ii), supra.

Defendant's proposal applies New York law too narrowly. Rather, there may be several forms of admissible evidence that Plaintiff could offer beyond the Application to make out its rescission claim. For example, Defendant may have made one or more misrepresentations by knowingly (or perhaps even innocently) not providing Plaintiff with information about his serious medical cardiac and circulatory history, even if Plaintiff can be said not to have requested the information. Plaintiff could offer evidence other than the Application to show these omissions.

Taking the narrower claim and focusing on Questions B.6.a. and B.9.a., Plaintiff alleges a cause of action for rescission based on the allegations that Defendant made at least two material

misrepresentations in the Application.[5]  Plaintiff alleges that Defendant omitted material information from Part 2, Section C, by failing to accurately provide additional details explaining his answer to Question B.6.a. of the Policy CMI.  See FAC ¶¶ 36, 42, 49.  Plaintiff also alleges that Defendant's response to Question B.9.a. was inaccurate.  See id. ¶¶ 36, 49.  Plaintiff alleges that Defendant made these representations intentionally "to induce MassMutual into issuing the Policy."  See FAC ¶ 52.

First, looking at Question B.6. of the Application, the Court observes that Plaintiff asked, "In the last 10 years, have you been diagnosed, treated, tested positive for, or been given medical advice by a member of the medical profession for a disease or disorder noted below."  FAC ¶ 17; ECF No. 21-1 at 51.  Below Question B.6., Defendant checked "Yes" next to "a. Chest pain, heart attack, high blood pressure, heart murmur, palpitations or any other disorder of the heart, arteries or veins."  Id. ¶¶ 17–18; ECF No. 21-1 at 51.  The parties do not argue that Defendant's "yes" answer to that question is a misrepresentation.  Instead, Plaintiff argues that Defendant made a misrepresentation by failing to provide accurate and/or complete details to explain his "yes" answer to Question B.6.a. in Section C of the Policy CMI.  Section "C," entitled "Additional Information," appears on a separate page from Question B.6.a.  See ECF No. 21-1 at 52.  Below "Additional Information," the Section C's instructions read: "Details.  Indicate section letter and question number.  Please use an additional sheet of paper if necessary."  See id. The following appears in the field for text responsive to Section C:

---

[5] See FAC ¶ 53 ("Upon information and belief, Mr. Tuchman may have made additional material misrepresentations in the Application that will be revealed in discovery.").

                    B6a
                         Other Yes
                              Description: high cholesterol;
                              Physician Information: don't remember;
                              Date of Diagnosis: 06-2005;

Id.

        As Defendant points out, "Section C of the Application attached to the Policy [did] not

expressly seek details regarding [Defendant's] "yes" answer to Question B.6.a."  Def. Mem.,

ECF No. 27-1, at 14.  The Application attached to the Policy did not expressly state what

information is called for in Section C.  It simply is entitled "[d]etails" and directed the applicant

to "indicate the letter and question number."  See ECF No. 21-1 at 52.  It did not, for example,

direct the applicant to list every applicable condition for each question as to which a "yes"

answer was given in Section B.[6]  It is possible that Defendant understood that the Application

requested or even required information about his medical issues and that he omitted this

information from the "details" section in order to conceal it from Plaintiff.  If this were correct,

the Policy may still be rescinded if Defendant omitted material information.  See III(B)(i)(1),

supra.  By way of a different argument, under some New York cases, discussed supra,

III(B)(i)(1), if Defendant had been aware of a medical diagnosis that he reasonably believed

would have influenced Plaintiff in acting upon his Application, good faith may have required

him to disclose that condition whether or not he was directly asked about it.  See Retail Local

906, 921 F. Supp. at 132.  The lack of good faith can be a basis for rescission.

_____

[6] Elsewhere in the Application, more concrete instructions were given where the Application
sought further details.  For example, in Part 1 of the Application, Question B.2 specifically
instructed the applicant to provide details in Section L, regarding any "yes" answer to Questions
B.3. – B.5., which concern tobacco use.  See ECF No. 21-1 at 35.  Part 2, Question B.6. did not
contain a similar instruction.  See id. at 51.

Second, looking now at Question B.9.a as it relates to Question B.6.a, the Court finds that Plaintiff has made out an argument, which if substantiated with medical evidence by the record after discovery, could arguably succeed. Plaintiff points out that while Question B.6.a. asked about "a disease or disorder" and "any other disorder of the heart, arteries or veins," ECF No. 21-1 at 51, in contrast, Question B.9.a. asked about "a condition not previously stated on this Application." Defendant assumes that in Questions B.6.a. and B.9.a., "disease", "disorder" and "condition" are synonymous such that when Defendant revealed he had a heart disease or disorder, he had also revealed that he had a condition, such that, other than high cholesterol, he correctly answered that he had no "condition not previously stated on this Application." Def. Mem., ECF No. 27-1, at 18-22. In contrast, Plaintiff argues that the term "condition" is more encompassing than the terms "disease and disorder" such that certain of Plaintiff's medical "conditions" would not have been disclosed by the acknowledgement that he had a "disease" or "disorder". See ECF No. 28 at 17. For example, Plaintiff argues that "ischemia" from which Defendant suffers qualifies as a "condition" rather than as a "disease or disorder." Id. The Court cannot make a determination as to this argument based on the pleadings; rather, additional analysis of the three terms (disease, disorder, condition) and development of the record medical information about Defendant's health beyond the pleading is needed for any factfinder to assess Defendant's argument as to ischemia. In the same vein, additional information beyond the pleading is needed to assess whether "Mild Aortic regurgitation", "Minimal Mitral regurgitation", "left atrial dilation" and "mild right atrial dilation" FAC ¶ 39, are diseases, disorders and/or conditions. See also id. ¶ 40. These arguments cannot be rejected on their face as Defendant suggests.

To review, Plaintiff in the FAC alleges substantial facts concerning Defendant's heart-related and other medical issues, diagnoses and treatment based on Defendant's medical records that were not disclosed in the Application attached to the Policy.  FAC ¶¶ 35-41.  It alleges that Defendant knew of his "various heart issues" but failed to include information about those issues "to induce MassMutual into issuing the policy."  See FAC ¶¶ 51–52.  It also alleges that Defendant "may have made additional material misrepresentations in the Application that will be revealed in discovery."  See id. ¶ 53.  Plaintiff alleges that, had Defendant not omitted information about his heart-related conditions, it would not have issued the Policy.  FAC ¶ 55.  Plaintiff has thus sufficiently alleged that Defendant omitted material information and that the Policy would not have issued had Defendant provided the information.

Whether an alleged nondisclosure rises to the level of a misrepresentation, innocent or otherwise, need not be proved at the pleading stage; the question is whether the nonmovant has alleged facts that, "if proven, would allow it to recover under some theory."  Allstate Interior Demolition, 193 F.3d at 115-16.  As it can be said that the Plaintiff has alleged that the information contained in the Application was false and incomplete, that Defendant knew that to be the case, and that Defendant made representations with the knowledge that Plaintiff would rely upon such information, "that is sufficient to overcome [a] motion to dismiss."  The U.S. Life Ins. Co. v. Grunhut, No. 0600550/2007, 2007 WL 2815418, at *6 (N.Y. Sup. Ct., N.Y. Co., Aug. 24, 2007).  It would be premature at this stage of the case to require Plaintiff to prove that Defendant withheld material medical information to "induce MassMutual into issuing the policy."  See FAC ¶ 52; Allstate Interior Demolition, 193 F.3d at 116 (conversion of motion to dismiss to summary judgment was inappropriate where "Allstate represented that it would show, as discovery progressed, that its admitted non-disclosure of the fact that it occasionally removed

elevators did not rise to the level of misrepresentation.  Under the Federal Rules of Civil Procedure, Allstate was not required to offer evidence on that issue, because FFIC's motion to dismiss the counterclaims was addressed to the sufficiency of the pleadings.").

Because Plaintiff has plausibly alleged sufficient facts to state a rescission claim, Defendant's motion to dismiss must be denied.

## V.    Conclusion

For the foregoing reasons, this Court respectfully recommends that the District Court deny Defendant's motion to dismiss the FAC for failure to state a claim pursuant to FRCP 12(b)(6).

In making this recommendation, the Court does not express a view as to any party's likelihood of success or failure as to the rescission claim, but rather, simply that Plaintiff should be allowed to proceed to dispositive motion practice after having had the opportunity to conduct discovery.  As discovery has been completed, ECF 11/04/22 Order, the Court will concurrently enter an order as to the briefing of the summary judgement motions, which will be stayed pending a resolution of this motion to dismiss.

Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge prior to the expiration of the fourteen-day period for filing objections.  Failure to file objections within fourteen days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals.  See Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022) (stating that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when

a party fails to object timely to a magistrate's recommended decision, it waives any right to

further review of that decision") (internal citation & quotations omitted).

Dated:  Brooklyn, New York
        February 10, 2023

                                    _Vera M. Scanlon_
                                    VERA M. SCANLON
                                    United States Magistrate Judge